KENNETH R. BRAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bray v. Commissioner
Docket No. 20122-86.
United States Tax Court
T.C. Memo 1988-485; 1988 Tax Ct. Memo LEXIS 512; 56 T.C.M. (CCH) 430; T.C.M. (RIA) 88485; October 5, 1988. Kenneth R. Bray, pro se. Susan J. Adler, for the respondent. PARR
PARR, Judge: Respondent determined deficiencies in petitioner's 1984 Federal income tax and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
$ 2,562.00
$ 203.19
$ 152.80
*
By way of Answer, respondent seeks damages by Court award in the amount of $ 5,000.00, pursuant to section 6673. The issues for determination are (1) whether petitioner is entitled to charitable contribution deductions for amounts allegedly paid to or on behalf of, the Contentment Universal Life *514 Church; (2) whether petitioner is liable for additions to tax under sections 6653(a)(1) and 6653(a)(2); (3) whether petitioner is liable for filing a late 1984 Federal income tax return under section 6651 (a)(1); and (4) whether damages should be awarded to the United States and against petitioner under section 6673. FINDINGS OF FACT The parties have filed a stipulation of facts and related exhibits which are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Long Beach, Calif. During the taxable year 1984, petitioner was employed on a full-time basis as a manufacturing engineer with the Kwik-Set Division of Emhart Industries. In 1978, petitioner first became interested in the Universal Life Church of Modesto, Calif. (ULC-Modesto). Thereafter, in 1978 or 1979 he formed a local congregation in Long Beach, Calif., known as the Contentment Universal Life Church (Contentment). Respondent previously determined deficiencies in R's Federal income taxes for taxable years 1981 and 1982, disallowing certain charitable contribution deductions claimed by petitioner. Petitioner filed petitions contesting these deficiencies, and later *515 signed a stipulation to be bound by the final decision in the consolidated cases of . Based upon the decision in Burwell, petitioner's deductions for the claimed charitable contributions were disallowed. Petitioner was informed of the Burwell decision in October 1987. Respondent sent petitioner a copy of the Burwell decision on November 24, 1987, and a copy of the petition filed in that case on November 30, 1987. The petition related to taxable year 1984 was filed by petitioner on June 16, 1986. Prior to 1984, petitioner had signature authority over Contentment's bank accounts and performed the related recordkeeping. George Pierson (Pierson), Contentment's treasurer, maintained a "cash box," and all transactions in 1984 between petitioner and Pierson were in the form of cash. When Contentment was formed, petitioner purchased a house claiming that his existing apartment was too small to handle church meetings. The excess of the monthly payments for the house over the apartment, together with utilities, including electricity, gas and telephone service, were reimbursed by Contentment. Petitioner occasionally *516 used his own personal funds to make cash payments to the indigent in downtown Long Beach, Calif., and was reimbursed by Contentment. Contentment also allegedly made similar payments to the poor directly from church funds. At the end of each month, petitioner would submit a voucher to Pierson detailing all reimbursable expenses. Petitioner has not offered any original receipts or other documentation to substantiate the vouchers. Both petitioner and Pierson testified that the documentation was unaccounted for since it was given to the Contentment secretary who had been suffering from AIDS-related dementia at the time. The actual procedure by which petitioner was reimbursed is unclear from the testimony. Petitioner testified that he received cash reimbursements from Pierson after approval by the Contentment board of directors, of which petitioner was a voting member. Pierson testified that petitioner paid his expenses himself, and would then submit a voucher to Pierson plus some amount of cash. After board approval, Pierson would prepare a contribution receipt and return it to petitioner. In any event, petitioner either gave cash to Pierson which was returned to petitioner to *517 pay his bills or petitioner paid the bills and received a receipt indicating he had "contributed" the amount paid for his personal expenses. The contribution receipts were pre-printed index cards which Pierson would fill in and sign, detailing the total amount, the donor's name, and the date of the contribution. Twelve such receipts naming petitioner as donor, and aggregating $ 13,925.00, were admitted into evidence at trial. On his 1984 income tax return, petitioner deducted $ 13,925.00 in charitable contributions to the Universal Life Church. Petitioner received an extension until August 15, 1985 to file his 1984 Federal income tax return. The return was mailed by petitioner on September 19, 1985 and received by respondent on September 23, 1985. At trial, petitioner claimed that the loss of documentation by the Contentment secretary was the reason petitioner filed his 1984 return late. OPINION The first issue for decision is whether petitioner is entitled to deductions for charitable contributions made to Contentment in 1984. Section 170 generally allows deductions for charitable contributions where taxpayers can prove that contributions were actually made to a qualified *518 tax-exempt organization and that no part of the net earnings of the qualified tax-exempt organization inured to the taxpayer's personal benefit. , affg. a Memorandum Opinion of this Court; ; , affd. without published opinion ; . Taxpayers bear the burden of proving their entitlement to the deductions they claim. ; Rule 142(a). This rule applies with equal force to deductions for charitable contributions. . Petitioner has failed to come forward with credible evidence to establish that any contributions were in fact actually made to Contentment. Since the claimed contributions were made in cash and Contentment used a "cash box" system, there are no reliable bank statements or other records to substantiate the fact that contributions were actually made. Further, *519 we find the receipts prepared by ULC members and presented by petitioner to this Court to not be credible. Assuming, arguendo, that petitioner actually made so-called contributions to Contentment, such amounts remain non-deductible since they were not made to a tax-exempt organization. This Court previously held that the exemption for ULC-Modesto does not constitute a group exemption for local ULC chapters. . Moreover, on August 28, 1984, the tax-exempt status of ULC-Modesto itself was revoked by the Internal Revenue Service, effective May 1, 1977. The United States Claims court upheld the revocation, , on appeal (Fed. Cir., Jan. 28, 1988). Whether or not that revocation is ultimately upheld, petitioner will not be helped because he did not make contributions to ULC-Modesto, but to Contentment. Finally, petitioner has come forward with no credible evidence to establish that Contentment itself constitutes a tax-exempt organization under section 501(c)(3). Thus, petitioner's claim that his contributions are deductible is without merit. Further, *520 petitioner's claimed contributions were not "charitable contributions" within the meaning of section 170(c). Subsection (c) defines "charitable contribution" to mean "a contribution or gift to or for the use of" certain entities organized and operated exclusively for, inter alia, religious or charitable purposes, no part of the net earnings of which inures to the benefit of any individual. . Neither the statute nor the regulation defines what is meant by "contribution or gift." ; , affd. on this issue . The expression "charitable contribution" as used in section 170 is synonomous with the word "gift". Sec. 170(c); ; , affd. . A gift is a by-product of "detached and disinterested generosity" given "out of affection, respect, admiration, charity or other impulses." . *521 A gift lacks legal or moral obligation and the inducement of anticipated benefit. . Whether a donation has been made is a question of fact. . We find that petitioner was not motivated by "detached and disinterested generosity" in the so-called contributions, but rather they were made with expectation of personal benefit in return. By his ersatz donation and reimbursement scheme, petitioner simply attempted to transform his personal expenses into deductible charitable contributions. See, e.g., . Therefore, we conclude that the so-called contributions by petitioner inured to his benefit, thereby failing to satisfy the requirements of section 170(c). Section 6653
Respondent determined additions to tax due to negligence or disregard of the rules or regulations under section 6653(a)(1) and (a)(2). Respondent's determination of negligence is presumptively correct and will be upheld unless petitioner rebuts that presumption. ; , *522 affg. an order of this Court; , affg. a Memorandum Opinion of this Court. This Court has repeatedly sustained section 6653 additions in cases involving purported charitable contributions to ULC-Modesto or its chapters which simply represented use of the taxpayer's funds for personal and family expenses. ; . Petitioner claimed deductions on his 1984 return for charitable contributions to Contentment notwithstanding the revocation of ULC-Modesto's tax-exempt status on August 18, 1984, to be effective May 1, 1977. Petitioner impressed us as a reasonable man. We do not think he believed that he could legitimately treat the payment of his personal expenses as a charitable contribution. Petitioner has failed to make any reasonable attempt to comply with the relevant provisions of the Internal Revenue Code. Accordingly, we sustain respondent's determinations of the additions to tax under section 6653. Section 6651(a)(1)
The parties have stipulated that petitioner received an extension until August 15, 1985 in *523 order to file his 1984 income tax return. It was further stipulated that petitioner mailed his 1984 return on September 19, 1985 and respondent received the return on September 23, 1985. At trial, petitioner testified that the reason for late filing was that there was a delay in receiving documentation from the Contentment secretary, who was later discovered to have been suffering from AIDS-related dementia at the time. Based upon the parties' stipulation, petitioner is liable for the late filing addition under section 6651(a)(1), unless petitioner satisfied his burden of proving that the delinquency was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); . We are convinced that the missing documentation would not have helped petitioner in any way, but instead would have made even more clear the spurious nature of the "contributions" claimed. Petitioner's late filing is not due to reasonable cause. Section 6673
The final issue for decision is whether damages should be awarded to the United States and against petitioner under section 6673. Section 6673 provides that this Court shall *524 award damages to the United States not in excess of $ 5,000.00 when it appears to the Court that the proceedings before it have been instituted or maintained primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless. In respondent's Answer and later correspondence, petitioner was informed of respondent's intent to seek damages under section 6673, and the grounds therefore. Petitioner was advised of the decision in Burwell in October 1987, whereby through previous stipulation petitioner's deductions for claimed charitable deductions for taxable years 1981 and 1982 were disallowed. The petition related to the taxable year 1984 was filed on June 16, 1986, before petitioner was aware of the Burwell decision. However, notwithstanding the intervening decision, petitioner continued to maintain this action. Petitioner contends that taxable year 1984 may be factually distinguished from taxable years 1981 and 1982, since he purports to have had not control over Contentment funds in 1984. Even if we believed this highly dubious proposition, the petitioner's position in support of the charitable contribution deductions is entirely without *525 merit. the maintenance of this case in spite of overwhelming contrary authority and repeated warnings by respondent compels the conclusion that his case was maintained primarily for delay and was both frivolous and groundless. Accordingly, we award damages t the United States in the amount of $ 5,000.00, under the authority of section 6673. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the 1984 taxable year, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50 percent of the interest due on the $ 2,031.90 underpayment of tax due to negligence. ↩